OPINION OF THE COURT
Richard B. Meyer, J.
*506 The defendant was convicted after plea of the crime of vehicular assault in the second degree (Penal Law § 120.03 [1]), a class E felony, arising out of a one-car accident on August 13, 2006 in which a 15-year-old passenger in a vehicle operated by the defendant suffered serious personal injuries after the vehicle left the highway and struck a tree. A five count indictment was filed on January 4, 2007, and subsequent to determination of the defendant’s omnibus motion a plea agreement was reached under which the defendant agreed to enter a guilty plea to the charge of vehicular assault in the second degree, waive appeal and postconviction remedies, pay restitution to the victims, and be subject to a sentence determined by the court including the imposition of fines, surcharges and fees.
Following entry of the defendant’s guilty plea on May 28, 2007 a presentence report was filed. Although no victim impact statements were filed with the probation department, counsel for the injured teenager and her father sent a letter to the prosecution and defendant’s attorney seeking restitution of $14,742.65, consisting, inter aha, of bills for ambulance services, medical expenses, and mileage expenses incurred by the father. Due to the defendant’s objection and request for a restitution hearing, such a hearing was conducted on August 28, 2007 (see People v White, 266 AD2d 831 [1999]; see also Penal Law § 60.27 [2]). The documentation from the personal injury attorney for the victim and her father was submitted into evidence, as was proof that the defendant’s automobile insurer paid no-fault benefits of $127,793.03 for the victim’s medical expenses and another $100,000 to settle the infant’s and her father’s civil causes of action arising out of the accident. In consideration of the $100,000 settlement payment, the victim’s father executed and delivered a general release in favor of the defendant, the owners of the vehicle and their insurance carrier. The defendant contends that the general release precludes any award of restitution to the victim or her father for medical and other expenses arising out of the accident.
The general release was executed by the infant’s father in his individual capacity and as the father of the infant after the settlement had been approved by an order issued by Supreme Court. The language of the release is general and by its terms discharges the defendant, his parents and their insurance carrier
“of an[d] from any and all manner of action and actions, cause and causes of action, suits, damages, *507 judgments, executions claims for personal injuries, property damage and demands whatsoever, in law or in equity . . . for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents and particularly, but without in any manner limiting the foregoing, on account of any cause of action for injuries sustained by the infant plaintiff . . . and parent’s derivative cause of action arising out of an accident which occurred on August 13, 2006, when [the infant] was a passenger in a 1997 Chevrolet automobile . . . operated by [the defendant] that exited the roadway and struck a tree . . .
The effect of a general release cannot be limited or curtailed in the absence of fraud or mutual mistake (see Lucio v Curran, 2 NY2d 157, 161 [1956]; Kirchner v New Home Sewing Mach. Co., 135 NY 182, 188 [1892]), and, as in the case of contracts generally, its meaning and coverage necessarily depend “upon both the controversy being settled and the purpose for which the release was actually given” (Cahill v Regan, 5 NY2d 292, 299 [1959]). “Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of’ (id.).
If the words of a release express a general discharge, the release must be construed most strongly against the releasor (Kirchner v New Home Sewing Mach. Co., supra; Murphy v City of New York, 190 NY 4l3 [1907]) and the burden rests upon the releasor to establish that the language of the release was not meant to be general (see Mt. Read Term, v Le Chase Constr. Corp., 58 AD2d 1034, 1035 [1977]).
“[W]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies . . . (cf. Simon v. Simon, 274 App. Div. 447, 450).” (Lucio v Curran, 2 NY2d at 161-162.)
At common law, the right to recover expenses incurred for the medical care of an injured infant belongs to the infant’s parent and an infant’s cause of action for personal injuries does not include the right to recover such costs (see Barnes v Keene, 132 NY 13, 15 [1892]; Cumming v Brooklyn City R.R. Co., 109 NY 95, 96-100 [1888]; Clarke v Eighth Ave. R.R. Co., 238 NY 246, 251 [1924]; Gilbert v Stanton Brewery, Inc., 295 NY 270, 273 [1946]).
*508 Here, it is clear that the general release covers the father’s restitution claim of $14,742.65 since his derivative cause of action is expressly discharged. Moreover, an award of restitution by this court for the amounts claimed would result in a double recovery and unjust enrichment by the infant victim’s father, which would be contrary to public policy (see, e.g., Silinsky v State-Wide Ins. Co., 30 AD2d 1, 5 [1968]; Moore v Leggette, 24 AD2d 891 [1965], affd 18 NY2d 864 [1966]; Wyman v Allstate Ins. Co., 29 AD2d 319 [1968]).
Ordered that no restitution shall be required as part of the defendant’s sentence to be imposed by this court as the claims for restitution have been paid and discharged.