Felix C. Benvenga, J.
This is a motion to set aside a verdict in plaintiffs’ favor in an action for personal injuries suffered by infant plaintiff through the negligence of a nurse employed by defendant hospital.
The infant plaintiff, at the time of the accident, was a six-week-old baby girl. Her doctor had prescribed steam vaporizer treatment. As a consequence of the nurse’s negligence, the right side of the infant’s face was burned in the area between the temple region and the corner of the mouth, including the right eyebrow and upper lid. The severest burns were in the center of the cheek. These were third degree burns, that is, the burns went through all the layers of the skin. An experiment in open court demonstrated that the burns could only have been caused by placing the nozzle of the vaporizer so close to the infant’s face as to touch, or almost touch it. In any event, at the time of the accident, according to the nurse’s testimony, she was the only person in the room attending the infant plaintiff and other babies in the same room. She said that, after plugging in the vaporizer, she left the infant plaintiff to give another baby a sponge bath, and, within a few minutes, she heard the baby scream. The accident had happened.
The vaporizer is not a complicated instrument. As counsel for defendant points out, ‘ ‘ All there was to do was to set it up in proper position and see that there was water in the unit and plug it in.” This was an administrative, rather than a medical or professional act. So, of course, was the act of the nurse in giving sponge baths and attending to the other babies. *275 All these services were part of the hospital’s administrative function, even though performed by a nurse; they were services which the hospital had contracted to furnish, and for which it was being paid. Consequently, the act of the nurse in using the vaporizer and, particularly, the act of the nurse in leaving the infant plaintiff unattended and without supervision, in order to perform some other administrative function having no connection with the treatment prescribed for the infant plaintiff, even though she did not leave the room, were acts of negligence for which the hospital is liable.
1. True, the doctrine of respondeat superior is not applicable to nurses engaged in professional tasks in the treatment of patients in a hospital. On the other hand, as has been pointed out, there is no difference between an injury caused by a doctor or nurse and one caused by a nonprofessional employee if the former be acting in an administrative capacity, and not in a professional one. The test is the naftire of the act, rather than who performs it (Volk v. City of New York, 284 N. Y. 279, 284, 286; Cadicamo v. Long Is. Coll. Hosp., 308 N. Y. 196; Santos v. Unity Hosp., 301 N. Y. 153; 30 St. John’s L. Rev. 297, 299, note to Berg v. New York Soc. for Relief of Ruptured & Crippled, 286 App. Div. 783).
In principle, the instant case is indistinguishable from the Cadicamo case (supra). There, a nurse, in order to warm an infant, placed an unguarded electric bulb close to a blanket enclosing the baby, left the room to attend to an administrative duty, and upon her return found the baby’s bassinet in flames. As in the instant case, it was left to the jury to determine whether the act which caused the death was professional or administrative in character. In holding that the question was properly submitted to the jury, the court said: “ Thus the jury might find that the furnishing of this type of lamp for use in such dangerous proximity to a helpless infant, who could not be expected to remain motionless, together with the withdrawal of supervision and attendance occasioned by the absence of the nurse on the administrative duty of returning feeding bottles to the basement, caused the fire and its fatal consequences.” (P. 201, emphasis in court’s opinion.)
Here, as in the Cadicamo ease, the interference of administrative functions with the medical treatment prescribed for the infant, left the infant exposed to danger. Moreover, in holding that the Cadicamo case was controlled by the decision of the court in the Santos case (supra) the court said (308 N. Y. 203): ‘ ‘ In both cases it was the administrative requirements of the hospital which took from the patient the competent care and *276 supervision to which she was entitled and which constituted the. additional factor that generated a tragedy.”
So, here, the tragedy would not have happened if the nurse had given the infant plaintiff the requisite care and supervision and had not left the baby helpless and unattended to perform other administrative duties required of her by the hospital.
The defendant relies to a large extent upon a dictum of Cabdozo, J., in the leading case of Schloendorff v. New York Hosp. (211 N. Y. 125, 132) to the following effect: “ It is true, I think, of nurses as of physicians, that in treating a patient they are not acting as the servants of the hospital.” But this dictum is qualified by, and should be read in the light of, the following sentences: ‘' But nurses are employed to carry out the orders of the physicians, to whose authority they are subject. The hospital undertakes to procure for the patient the services of a nurse. It does not undertake through the agency of nurses to render those services itself.” (Cf. Bakal v. University Heights Sanitarium, 277 App. Div. 572, 576, affd. 302 N. Y. 870.)
When read in the light of its context, it becomes quite clear that the general rule, as laid down in the Schloendorff case and reiterated by later pronouncements of the Court of Appeals (see cases cited supra), is that, in treating a patient, a'nurse, even though in the employ of a hospital, is not acting as a servant of the hospital within the doctrine of respondeat superior, if, at the time of the accident, she was engaged in carrying out the orders of the patient’s physician. On the contrary, the nurse is a servant of the hospital and the doctrine of respondeat superior applies, if, as in the case at bar, the nurse, at the time of the accident was not engaged in treating the patient professionally, but had left the patient, helpless and unattended, in order to perform some administrative duty having no connection with the treatment prescribed for the patient, but which was part of the administrative function of the hospital.
2. As respects the alleged excessiveness of the verdict, it is not to be lost sight of that the infant plaintiff is now a girl of about seven, and that the entire right side of her face (an otherwise beautiful face) is permanently and irreparably disfigured. The jury saw the effect of the burns, and have assessed the damages. I also had occasion to view the injuries, and I cannot say, as matter of law, that the verdict is excessive.
As for the amount awarded the father' for loss of services, it is true, as defendant suggests, that future medical expenses are recoverable only in the infant’s action for personal injuries (see Clarke v. Eighth Ave. R. R. Co., 238 N. Y. 246, 250-251). Nevertheless, the jury are permitted, in an action for loss of *277 services, to estimate damages for prospective loss of services during the child’s minority (see Cuming v. Brooklyn City R. R. Co., 109 N. Y. 95, 98-100; Clarke v. Eighth Ave. R. R. Co., supra). This the jury have done, and I do not believe that, as matter of law, the amount fixed is excessive.
3. Finally, it is contended that the court erred in permitting the infant’s mother to testify to an alleged conversation with the nurse after the event. The nurse, presumably, is the only person who knows anything about the occurrence. She was called as a witness not only by the plaintiffs, but by the defendant as well. But all that the mother testified to was that, in the course of conversation, the nurse said “ There is nothing I can say; it just happened; I was doing my rounds.” It is argued that, as the nurse was called by plaintiffs, the necessary effect of the evidence was to impeach her testimony by proof of an alleged prior inconsistent oral statement (see Civ. Prac. Act, § 343-a; Jenkins v. 313-321 West 37th St. Corp., 284 N. Y. 397, 402-403). In the first place, I fail to perceive any inconsistency between the evidence adduced and the nurse’s testimony. Moreover, it is difficult to see how the evidence (assuming it to have been contradictory) could have influenced the verdict. What undoubtedly brought about the verdict was the finding of the jury based upon the experiment in open court. This demonstrated conclusively that the accident could not have happened in the time and in the manner testified to by the nurse. The jury could have found, and undoubtedly did find, on the basis of the experiment, that her testimony in this respect was unworthy of belief.
The motion is denied with exception to the defendant, who is granted a 30-day stay of execution and 60 days within which to make and serve the record on appeal.